1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    J. PEDRO ZARATE,                          No.  2:13-cv-0659 KJM KJN PS

12                 Plaintiff,

13        v.                                     ORDER AND

14    AMTRUST BANK, et al.,                      FINDINGS AND RECOMMENDATIONS

15                 Defendants.

16

17        By these findings and recommendations, the court recommends that plaintiff's claims

18    against defendant Federal Deposit Insurance Corporation as Receiver for and on behalf of

19    Amtrust Bank ("FDIC") be dismissed with prejudice and that plaintiff's remaining claims be

20    remanded to state court.

21    BACKGROUND[1]

22        On March 13, 2009, plaintiff, presently a resident of Sacramento, California, commenced

23    this action concerning foreclosure of his real property in Acampo, California, against defendants

24    Amtrust Bank, Linda K. Weeks, Re/Max Gold Real Estate, Williams & Williams Worldwide

25    Real Estate Auctions, and Quality Loan Service Corporation in the San Joaquin County Superior

26

27    [1] Because the resolution of plaintiff's claims against the FDIC and remand of the remaining
      claims to state court do not implicate the substantive merits of plaintiff's claims, the court does
28    not set forth the background facts concerning plaintiff's claims in significant detail.

                                                    1

1   Court.  Plaintiff alleged that although representatives from Amtrust Bank had orally agreed to

2   postpone a January 21, 2009 foreclosure sale if plaintiff submitted documentation required for a

3   loan modification review, which plaintiff provided, Amtrust Bank nonetheless foreclosed on the

4   property, with the assistance of Quality Loan Service Corporation as trustee.[2]  Plaintiff further

5   alleged that Amtrust Bank, defendant Linda Weeks (affiliated with defendant Re/Max Gold Real

6   Estate), and/or others had wrongfully entered the real property and taken his personal belongings.

7   Plaintiff asserted state law claims for (1) setting aside the trustee's sale; (2) cancellation of deed;

8   (3) injunctive relief; (4) breach of contract; (5) fraud; (6) trespass to real property; (7) trespass to

9   personal property; and (8) conversion.   (See ECF No. 1-1 at 8-22.)

10      Amtrust Bank filed an answer to plaintiff's complaint in state court on June 16, 2009.

11   (ECF No. 1-1 at 23-32.)  During the pendency of the action in state court, the other defendants

12   were not served with process. (ECF No. 9.)  On December 4, 2009, Amtrust Bank was closed by

13   the United States Department of the Treasury's Office of Thrift Supervision, and the FDIC was

14   appointed as Receiver.  (See FDIC's Request for Judicial Notice, ECF No. 16-2 ["RJN"] Ex. H.)[3]

15   Thereafter, on April 30, 2011, the FDIC determined that "insufficient assets exist in the

16   receivership of AmTrust Bank, Cleveland, Ohio, to make any distribution to general unsecured

17   claims, and therefore such claims will recover nothing and have no value."  (RJN Ex. I.)  The

18   FDIC's notice in the Federal Register setting forth the no-value determination explained:

> On December 4, 2009, AmTrust Bank, Cleveland, Ohio, (FIN #10155) was closed by the Office of Thrift Supervision ("OTS"), and the Federal Deposit Insurance Corporation ("FDIC") was appointed as its receiver ("Receiver").  In complying with its statutory duty to resolve the institution in the method that is least costly to the deposit insurance fund, see 12 U.S.C. 1823(c)(4), the FDIC facilitated a transaction with New York Community Bank, Westbury, New York, to acquire the deposits and most of the assets of the failed institution.
>
> Section 11(d)(11)(A) of the Federal Deposit Insurance Act, 12

[2] Public records, discussed below, reveal that Amtrust Bank itself purchased the property at the foreclosure sale.  (See Trustee's Deed Upon Sale, RJN Ex. F.)  Thereafter, on December 16, 2010, plaintiff's former property was conveyed to third parties via a special warranty deed recorded on December 21, 2010.  (RJN, Ex. G.)

[3] FDIC's request for judicial notice is addressed in the "Discussion" section below.

2

U.S.C. 1821(d)(11)(A), sets forth the order of priority for distribution of amounts realized from the liquidation or other resolution of an insured depository institution to pay claims. Under the statutory order of priority, administrative expenses and deposit liabilities must be paid in full before any distribution may be made to general unsecured creditors or any lower priority claims.

As of December 31, 2010, the value of assets available for distribution by the Receiver, together with anticipated recovery sources, including recoveries on claims against directors, officers, and other professionals, claims in bankruptcy, and refunds of Federal and state taxes, was $3,102,153,098. As of the same date, administrative expenses and depositor liabilities equaled $4,555,852,340, exceeding available assets by $1,453,699,242. Accordingly, the FDIC has determined that insufficient assets exist to make any distribution on general unsecured creditor claims (and any lower priority claims) and therefore all such claims, asserted or unasserted, will recover nothing and have no value.

(Id.)

Subsequently, on March 14, 2013, the San Joaquin County Superior Court granted the substitution of FDIC for Amtrust Bank for purposes of this action. (ECF No. 1-2 at 106-07.) On April 4, 2013, FDIC then removed the action to this court pursuant to 12 U.S.C. § 1819, which provides that generally, "all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States" for purposes of federal court jurisdiction. 12 U.S.C. § 1819(b)(2)(A).[4] Plaintiff did not file a motion for remand or otherwise oppose the removal of the action to federal court.

Presently pending before the court are several motions filed by various parties. On August 5, 2013, plaintiff filed a motion for an extension of time until September 5, 2013, to serve the remaining defendants with process. (ECF No. 9.) On September 23, 2013, defendant Quality Loan Service Corporation appeared and filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 14.) Thereafter, on September 30, 2013, defendant FDIC filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 16.) Then, on October 15, 2013, defendants Linda K. Weeks and NorCal Gold, Inc.

---

[4] An appropriate action must be removed by the FDIC "before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against the [FDIC] or the [FDIC] is substituted as a party." 12 U.S.C. § 1819(b)(2)(B). Given that the FDIC was substituted as a party on March 14, 2013, the April 4, 2013 removal was timely.

3

1   (erroneously sued as Re/Max Gold Real Estate) appeared and joined in the motion to dismiss filed

2   by defendant Quality Loan Service Corporation and the motion for judgment on the pleadings

3   filed by defendant FDIC. (ECF No. 17.) These motions are addressed separately below.

4   DISCUSSION

5           Plaintiff's Motion for Extension of Time to Serve Defendants With Process

6           On August 5, 2013, plaintiff filed a motion for an extension of time until September 5,

7   2013, to serve any remaining defendants with process. (ECF No. 9.) In that motion, plaintiff

8   explained that he had not previously served the defendants other than Amtrust Bank with process,

9   because he had relied on his former attorney to accomplish service of process. However,

10  according to plaintiff, that attorney has since been suspended from the practice of law and no

11  longer represents plaintiff.

12          Since the filing of plaintiff's motion, it appears that all of the defendants, except for

13  defendant Williams & Williams Worldwide Real Estate Auctions, have now appeared through

14  counsel. Nevertheless, in the interests of clarity, the court retroactively grants plaintiff an

15  extension of time until September 5, 2013, to complete service of process.

16          FDIC's Motion for Judgment on the Pleadings

17          As noted above, FDIC filed a motion for judgment on the pleadings, which was noticed

18  for hearing on November 7, 2013. (ECF No. 16.) Plaintiff failed to file an opposition or

19  statement of non-opposition to that motion in accordance with Local Rule 230(c). After

20  reviewing the papers in support of the motion, the court found the motion to be suitable for

21  resolution without oral argument and submitted the motion on the record pursuant to Local Rule

22  230(g). (ECF No. 19.)[5]

23                  *Request for Judicial Notice*

24          Before proceeding to the substance of the FDIC's motion, the court addresses the FDIC's

25  request for judicial notice filed in conjunction with that motion.

26  _____

27  [5] The court notes that plaintiff had previously filed an opposition to the FDIC's first motion for
    judgment on the pleadings, which was withdrawn. (ECF Nos. 5, 11, 12.) In light of plaintiff's
    pro se status, the court has also reviewed and considered that prior opposition brief for purposes
28  of the present motion for judgment on the pleadings.

                                        4

1    "The court may judicially notice a fact that is not subject to reasonable dispute because it:

2    (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

3    readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R.

4    Evid. 201(b).  A court may take judicial notice of "matters of public record."  Lee v. City of Los

5    Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

6        The court grants the FDIC's request for judicial notice, because the 11 exhibits of which

7    judicial notice is requested (Exhibits A-K) are publicly recorded documents, public court records,

8    documents from government agency websites, and/or contents from the Federal Register.  As

9    such, these documents constitute sources whose accuracy cannot reasonably be questioned.

10              *Substantive Analysis of the FDIC's Motion for Judgment on the Pleadings*

11       "After the pleadings are closed--but early enough not to delay trial--a party may move for

12   judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Because the motions are functionally

13   identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c)

14   analog."  Dworkin v. Hustler Magazine Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).  Dismissal may

15   generally be granted where there is no cognizable legal theory or lack of sufficient facts alleged

16   under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

17   1990).  In considering a motion for judgment on the pleadings, the Court accepts all factual

18   allegations in the complaint as true and must construe them in the light most favorable to the non-

19   moving party.  Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).  "[A] judgment on the

20   pleadings is appropriate when, even if all allegations in the complaint are true, the moving party

21   is entitled to judgment as a matter of law."  Westlands Water Dist. v. Firebaugh Canal, 10 F.3d

22   667, 670 (9th Cir. 1993).

23       In its motion, the FDIC argues that plaintiff's claims against the FDIC should be

24   dismissed for lack of subject matter jurisdiction, because no effective relief can be granted as to

25   such claims, which are moot and/or entirely precluded.  That argument has merit.

26       Article III of the United States Constitution grants federal courts jurisdiction to decide

27   only actual cases or controversies.  U.S. Const. art. III, § 2, cl. 1; see also Gator.com Corp. v. L.L.

28   Bean, Inc., 398 F.3d 1125, 1128 (9th Cir. 2005) ("It is an inexorable command of the United

1    States Constitution that the federal courts confine themselves to deciding actual cases and

2    controversies.").  Thus, a federal court has a duty "to decide actual controversies by a judgment

3    which can be carried into effect, and not to give opinions upon moot questions or abstract

4    propositions, or to declare principles or rules of law which cannot affect the matter in issue in the

5    case before it."  Mills v. Green, 159 U.S. 651, 653 (1895); see also Iron Arrow Honor Society v.

6    Heckler, 464 U.S. 67, 70 (1983) ("Federal courts lack jurisdiction to decide moot cases because

7    their constitutional authority extends only to actual cases or controversies."); U.S. v. Geophysical

8    Corp. of Alaska, 732 F.2d 693, 698 (9th Cir. 1984) (holding that federal courts "cannot take

9    jurisdiction over a claim as to which no effective relief can be granted.")

10          Based on the above-mentioned principles, courts have dismissed claims against the FDIC

11   as receiver for mootness and lack of jurisdiction where the receivership estate has insufficient

12   assets to satisfy the plaintiff's claim.  See Henrichs v. Valley View Development, 474 F.3d 609,

13   615 (9th Cir. 2007) (affirming dismissal of moot claim against FDIC as receiver when no assets

14   remained in the receivership to satisfy plaintiff's claim, stating that federal courts "have no

15   jurisdiction over moot claims."); Rodrigues v. Fed. Deposit Ins. Corp., 2012 WL 1945497, at

16   **3-4 (N.D. Cal. May 30, 2012) (unpublished).

17          "Congress unequivocally expressed its intent to limit the maximum liability of the FDIC

18   to the amount the claimant would have received in a liquidation under federal priority

19   regulations."  First Ind. Fed. Sav. Bank v. F.D.I.C., 964 F.2d 503, 507 (5th Cir. 1992); Henrichs

20   v. Valley View Dev., 474 F.3d 609, 615 (9th Cir. 2007) (citing First Ind. Fed. Sav. Bank, 964

21   F.2d at 507); see also 12 U.S.C. § 1821(i)(2).  Under the established priority scheme for

22   distribution of receivership assets, general unsecured creditors, such as plaintiff here, are paid

23   only after the administrative expenses incurred by the FDIC and depositor liabilities have first

24   been paid in full.  12 U.S.C. § 1821(d)(11)(A); see also Fed. Deposit Ins. Corp. v. RPM Mortg.,

25   2010 WL 9502044, at *3 (C.D. Cal. Aug. 13, 2010) (unpublished).

26          In this case, the FDIC on April 30, 2011, formally determined, and on May 11, 2011,

27   published a notice in the Federal Register, that the administrative expenses and depositor

28   liabilities of the Amtrust Bank receivership exceeded available assets, and that "insufficient assets

1   exist in the receivership of AmTrust Bank, Cleveland, Ohio, to make any distribution to general

2   unsecured claims, and therefore such claims will recover nothing and have no value." (RJN Ex.

3   I.)[6]   Thus, the FDIC correctly points out that, even if all plaintiff's allegations were accepted as

4   true and plaintiff were to prevail on his claims against the FDIC, there would be no assets in the

5   receivership estate from which plaintiff could recover any damages.  As such, plaintiff's damages

6   claims against the FDIC are moot, there is no actual case or controversy with regards to such

7   claims, and they should be dismissed for lack of subject matter jurisdiction.[7]

8           Furthermore, plaintiff's claims for equitable relief, such as plaintiff's claims for setting

9   aside the trustee's sale, cancellation of deed, and injunctive relief are barred by 12 U.S.C. §

10  1821(j).  The Ninth Circuit has explained that provision, and its role in the statutory framework,

11  as follows:

12              Congress has granted the FDIC as receiver express statutory
            authority to dispose of receivership assets, thereby reducing the
13          losses borne by federal taxpayers when federally insured financial
            institutions…fail.  As receiver, the FDIC has broad authority to
14          "take over the assets … and conduct all business of the institution,"
            "collect all obligations and money due to the institution," and
15          "preserve and conserve the assets and property of such institution."
            12 U.S.C. § 1821(d)(2)(B)(i), (ii), (iv).  Moreover, the FDIC may
16          "place the insured depository institution in liquidation and proceed
            to realize upon the assets of the institution…." 12 U.S.C. §
17          1821(d)(2)(E).  The FDIC as receiver may also "transfer any asset
            or liability of the institution in default … without any approval,
18

19  [6] The court is permitted to consider the no-value determination in resolving the FDIC's challenge
    to the court's subject matter jurisdiction.  See Rogers v. FDIC as Receiver for Downey Sav. &
20  Loan, 2011 WL 2433647, at *2 (E.D. Cal. June 14, 2011) ("Such evidence may be considered in
    conjunction with a challenge to subject matter jurisdiction.") (citing McCarthy v. United States,
21  850 F.2d 558, 560 (9th Cir. 1988)).

22  [7] Plaintiff's opposition to the FDIC's previously-withdrawn motion for judgment on the pleadings
    appears to question the accuracy of the FDIC's no-value determination.  However, courts have
23  found such determinations, published in the Federal Register, to be "conclusive and binding on
    the court." Nasoordeen v. F.D.I.C., 2010 WL 1135888, at *8 (C.D. Cal. Mar. 17, 2010)
24  (unpublished); see also Deutsche Bank Nat'l Trust Co. v. F.D.I.C, 854 F. Supp. 2d 756, 760 n.2
    (C.D. Cal. 2011).  Even though there may well be other vehicles to challenge such administrative
25  determinations, a collateral attack on the no-value determination in the context of this individual
    foreclosure action is improper.  See 281-300 Joint Venture v. Onion, 938 F.2d 35, 38 (5th Cir.
26  1991) (finding a collateral attack on a no-value determination to be improper); Bank of Am., N.A.
    v. F.D.I.C., 2013 WL 4505424, at *6 (D.D.C. Aug. 26, 2013) (a no-value determination "is not
27  subject to collateral attack through individual lawsuits against the FDIC.").
28

assignment, or consent…."   12 U.S.C. § 1821(d)(2)(G)(i)(II).
Finally, the FDIC may "exercise … such incidental powers as shall
be necessary to carry out such powers," and "take any action
authorized by this Chapter, which the [FDIC] determines is in the
best interests of the depository institution, its depositors, or the
[FDIC]." 12 U.S.C. § 1821(d)(2)(J)(i), (ii).

…

Essential to these enumerated powers is the FDIC's ability to carry
out its basic functions as a receiver free from judicial restraint,
pursuant to 12 U.S.C. § 1821(j).   Section 1821(j), entitled
"Limitation on court action," states that "[e]xcept as provided in
this section, no court may take any action, except at the request of
the Board of Directors by regulation or order, to restrain or affect
the exercise of powers or functions of the [FDIC] as a conservator
or a receiver."

It is well-established that § 1821(j) bars restraint by the courts on
the statutory powers of the FDIC when it acts as receiver. *See In re
Landmark Land Co.*, 973 F.2d 283, 290 (4th Cir. 1992) (stating that
the comprehensive scheme of [the Financial Institutions Reform,
Recovery, and Enforcement Act], which includes 12 U.S.C. §
1821(j), indicates Congress' intent to allow the RTC [the former
entity charged with the FDIC's present functions] full reign in
exercising its statutory authority without injunctive restraints
imposed by the courts); *Ward v. Resolution Trust Corp.*, 996 F.2d
99, 102-04 (5th Cir. 1993) (stating that the RTC is free to liquidate
receivership assets without being encumbered by the possibility of
injunctive actions, and further explaining that rescission is even
more problematic than an injunction); *Telematics Int'l, Inc. v.
NEMLC Leasing Corp.*, 967 F.2d 703, 705 (1st Cir. 1992).

Sahni v. American Diversified Partners, 83 F.3d 1054, 1058 (9th Cir. 1996).  Indeed, as the Ninth

Circuit further observed:

[C]ourts have applied § 1821(j) to insulate the actions of the FDIC
as receiver from restraint, even where the receiver is alleged to have
violated state law and equitable remedies are available. *See Volges
v. Resolution Trust Corp.*, 32 F.3d 50, 52 (2d Cir. 1994) (refusing to
enjoin a receiver's sale of mortgages even though the sale might
violate state contract law because receivers have broad powers to
dispose of the assets of a failed institution as they see fit), *cert.
denied*, 515 U.S. 1162, 115 S.Ct. 2618, 132 L.Ed.2d 860 (1995);
*Gross v. Bell Sav. Bank*, 974 F.2d 403, 407-08 (3d Cir. 1992)
(holding that when the RTC performs functions assigned to it by
statute, injunctive relief will be denied even when the RTC is acting
in violation of other statutory schemes).

Id. at 1059-60.

////

8

1    Here, plaintiff's property was foreclosed on and sold at a public auction on January 21,

2    2009, at which Amtrust Bank itself purchased the property.  (See Trustee's Deed Upon Sale, RJN

3    Ex. F.)  As noted above, the FDIC was subsequently appointed as Amtrust Bank's receiver on

4    December 4, 2009.  (RJN Ex. H.)  Thereafter, on December 16, 2010, plaintiff's former property

5    was conveyed by the FDIC to third parties via a special warranty deed recorded on December 21,

6    2010.  (RJN, Ex. G.)  Plainly, the granting of plaintiff's requests for equitable relief in this action

7    would constitute an improper judicial restraint on, and interference with, the FDIC's activities as

8    receiver for Amtrust Bank in violation of section 1821(j), because such relief would essentially

9    involve setting aside the prior conveyances and cancelling the associated deeds.  Sahni, 83 F.3d at

10   1059.  Accordingly, plaintiff's equitable claims against the FDIC are precluded by section 1821(j)

11   and are likewise subject to dismissal.

12       Therefore, for the reasons outlined above, the court concludes that the FDIC's motion for

13   judgment on the pleadings should be granted.  Because plaintiff's claims against the FDIC are not

14   capable of being cured by further amendment, the claims should be dismissed with prejudice.

15       Remaining Claims/Motions

16       As noted above, plaintiff's complaint contains only state law claims and does not assert

17   any federal claims.  Furthermore, the parties are not completely diverse, because plaintiff and at

18   least one or more defendants (including defendant Linda K. Weeks) are alleged to be citizens of

19   California.  Indeed, the action was only removed to federal court in light of the FDIC's status as

20   receiver of Amtrust Bank pursuant to 12 U.S.C. § 1819.

21       Therefore, in light of the recommendation that plaintiff's claims against the FDIC be

22   dismissed with prejudice, the court also finds it appropriate to decline to exercise supplemental

23   jurisdiction over the remaining claims.  See 28 U.S.C. § 1367(c)(3) ("The district courts may

24   decline to exercise supplemental jurisdiction over a claim...if – the district court has dismissed all

25   claims over which it has original jurisdiction"); see also Acri v. Varian Associates, Inc., 114 F.3d

26   999, 1000-01 (9th Cir. 1997) (" 'in the usual case in which all federal-law claims are eliminated

27   before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the

28   remaining state-law claims' "), quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350

9

1  n.7 (1988).  Here, given that a trial date in this court has not yet been set, the court recommends

2  that plaintiff's remaining claims be remanded to state court and that the pending motion to

3  dismiss filed by defendant Quality Loan Service Corporation, and joined in by defendants Linda

4  K. Weeks and NorCal Gold, Inc., be denied without prejudice.  Importantly, the court expresses

5  no opinion as to the merits of that motion, which may be renewed in state court pursuant to its

6  procedures.

7        One issue raised by the motion to dismiss filed by defendant Quality Loan Service

8  Corporation, and joined in by defendants Linda K. Weeks and NorCal Gold, Inc., requires some

9  brief discussion.  In that motion, these defendants contended, in addition to making other

10  substantive arguments concerning the merits of plaintiff's claims, that plaintiff lacked standing to

11  assert his claims, because plaintiff had filed a Chapter 13 bankruptcy petition in bankruptcy court,

12  which was converted to a Chapter 7 case in September 2013.  (ECF Nos. 14-1, 17.)  It is well-

13  established that "the bankruptcy code endows the bankruptcy trustee with the exclusive rights to

14  sue on behalf of the estate."  Estate of Spirtos v. One San Bernardino County Superior Court Case

15  Numbered SPR 02211, 443 F.3d 1172, 1176 (9th Cir. 2006).  The court further notes that, on

16  October 24, 2013, plaintiff's Chapter 7 Trustee, Geoffrey Richards, filed a request for a

17  continuance for at least 60 days to allow the Trustee, who had only recently been appointed, to

18  make decisions on how to handle the case; for example, whether to pursue the claims, abandon

19  the claims to plaintiff, etc.  (ECF No. 18.)

20        Ordinarily, the court would be inclined to grant the Trustee such a continuance.

21  Obviously, the issue of plaintiff's standing also applies to plaintiff's claims against the FDIC, and

22  indeed, the FDIC also raised the standing issue in its motion for judgment on the pleadings.  (ECF

23  No. 16-1.)  However, in light of the unique circumstances of this case, the court finds it

24  appropriate to presently resolve the FDIC's motion for judgment on the pleadings.  Regardless of

25  whether the claims against the FDIC are ultimately pursued by the bankruptcy trustee or plaintiff

26  (after any abandonment by the bankruptcy trustee), such claims are precluded for the reasons

27  discussed above and must be dismissed.  Because the involvement of the FDIC as a party is the

28  only real basis for federal court jurisdiction, it makes little sense to grant the requested

1    continuance at this juncture, only in a few months to then recommend dismissal of the claims

2    against the FDIC, with the action to be remanded to state court at that point.  Judicial efficiency

3    and economy are better served by addressing the incurable claims against the FDIC now, and

4    allowing the case to be remanded to state court and to proceed without any unnecessary delays.

5          Notably, no prejudice to the Trustee would result.  Due to the inherent time that passes

6    between the issuance of these findings and recommendations and their adoption by the district

7    judge (assuming that they are adopted), the Trustee should have sufficient time to investigate

8    plaintiff's remaining claims and decide how he would like to proceed.  Furthermore, upon any

9    remand, the Trustee may also seek an appropriate extension of time in state court, if necessary.

10   CONCLUSION

11         For the reasons discussed above, IT IS HEREBY ORDERED that:

12         1.  Plaintiff's motion for an extension of time until September 5, 2013, to complete

13             service of process (ECF No. 9) is GRANTED.

14         2.  All further motion practice, except for any motions seeking relief of an emergency

15             nature, is stayed pending resolution of the findings and recommendations by the

16             district judge.

17         IT IS ALSO HEREBY RECOMMENDED that:

18         1.  The FDIC's motion for judgment on the pleadings (ECF No. 16) be GRANTED.

19         2.  Any asserted claims against the FDIC be DISMISSED WITH PREJUDICE.

20         3.  The remaining claims in this action be REMANDED to the San Joaquin County

21             Superior Court.

22         4.  The motion to dismiss filed by defendant Quality Loan Service Corporation, and

23             joined in by defendants Linda K. Weeks and NorCal Gold, Inc. (ECF No. 14), be

24             DENIED WITHOUT PREJUDICE.

25         5.  The Clerk of Court be directed to serve a certified copy of the order on the Clerk of

26             the San Joaquin County Superior Court, and reference the state case number (39-2009-

27             00206103-CU-OR-STK) in the proof of service.

28         6.  The Clerk of Court be directed to close this case and vacate all dates.

1    These findings and recommendations are submitted to the United States District Judge

2 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

3 days after being served with these findings and recommendations, any party may file written

4 objections with the court and serve a copy on all parties.  Such a document should be captioned

5 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6 shall be served on all parties and filed with the court within fourteen (14) days after service of the

7 objections.  The parties are advised that failure to file objections within the specified time may

8 waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th

9 Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

10    IT IS SO ORDERED AND RECOMMENDED.

11 Dated:  November 1, 2013

12

13    KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28